# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE. SUBPOENA IN CIVIL ACTION No. 2:23-cv-9430 | Case: 1:25-mc-00027<br>Assigned To : Cooper, Christopher R.<br>Assign. Date : 03/03/2025<br>Description: Misc.<br>Misc. Action No. |

## DEPARTMENT OF JUSTICE'S
## MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER



**RECEIVED**

MAR - 3 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

I.      The Underlying Litigation ........................................................................................ 1

II.     The Instant Subpoena............................................................................................... 2

LEGAL STANDARD............................................................................................................. 4

ARGUMENT........................................................................................................................... 5

I.      Rule 45(d)(3)(A)(ii) Requires the Court to Quash the Subpoena ........................... 5

II.    The Subpoena Imposes an Undue Burden on the FBI ............................................ 6

       a.      The Discovery Sought Has Been Obtained or Is Available from an Alternative Source. .................................................................................... 8

       b.      The Subpoena Failed to Provide a Reasonable Time to Comply ........... 8

III.   In The Alternative, The Court Should Prescribe a Less Burdensome Method of Discovery ................................................................................................................ 10

CONCLUSION...................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*Alexander v. FBI*,
   192 F.R.D. 42 (D.D.C. 2000) .................................................................................... 4

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................. 6

*Armenian Assembly of Am., Inc. v. Cafesjian*,
   746 F. Supp. 2d 55 (D.D.C. 2008) ............................................................................ 5

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
   318 F. Supp. 3d 347 (D.D.C. 2018) ....................................................................... 4, 7

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y.1996) .................................................................................. 9

*Crawford–El v. Britton*,
   523 U.S. 574 (1998) .................................................................................................. 5

*Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*,
   339 F.R.D. 334 (D.D.C. 2021) ......................................................................... 4, 5, 8

E*xxon Shipping Co. v. U.S. Dep't of Interior*,
   34 F.3d 774 (9th Cir. 1994) .................................................................................. 4, 7

*Gomez v. City of Nashua*,
   126 F.R.D. 432 (D.N.H. 1989) .................................................................................. 8

*In re Kirkland*,
   75 F.4th 1030 (9th Cir. 2023) ................................................................................ 5, 6

*In re Micron Tech., Inc. Sec. Litig.*,
   264 F.R.D. 7 (D.D.C. 2010) ...................................................................................... 4

*In re Mot. to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*,
   257 F.R.D. 12 (D.D.C. 2009) .................................................................................... 5

*In re Sealed Case*,
   856 F.2d 268 (D.C. Cir. 1988) .................................................................................. 7

*In re Sulfuric Acid Antitrust Litig.*,
   231 F.R.D. 320 (N.D. Ill. 2005) ................................................................................ 9

*Jaynes v. Jaynes*,
   496 F.2d 9 (2d Cir. 1974) .......................................................................................... 5

*Kwan Fai Mak v. FBI*,
  252 F.3d 1089 (9th Cir. 2001) .................................................................................................. 7

*Minor Doe I Through Parent I Doe v. Sch. Bd. for Santa Rosa Cnty.*,
  2009 WL 10674249 (N.D. Fla. Nov. 23, 2009) .......................................................................... 9

*Watts v. SEC*,
  482 F.3d 501 (D.C. Cir. 2007) ......................................................................................... 4, 5, 7

*Yousuf v. Samantar*,
  451 F.3d 248 (D.C. Cir. 2006) .................................................................................................. 9

**STATUTES**

5 U.S.C. § 552 ................................................................................................................................ 7

**RULES**

Fed. R. Civ. P. 26 ................................................................................................................ 5, 7, 11

Fed. R. Civ. P. 31 ........................................................................................................................ 11

Fed. R. Civ. P. 32 .......................................................................................................................... 6

Fed. R. Civ. P. 45 ...................................................................................................................... 4, 9

**REGULATIONS**

28 C.F.R. § 16.26 .......................................................................................................................... 8

**INTRODUCTION**

On January 7, 2025, in *Hunter Biden v. Patrick Byrne*, No. 2:23-cv-9430 (C.D. Cal.), the Federal Bureau of Investigation (FBI) was served a third-party subpoena, accompanied by a Touhy Request, seeking a deposition outside the issuing court's jurisdiction and burdensome on the FBI. Because the request is improper under Rule 45 and Rule 26, the Court should quash the subpoena.[1]

**BACKGROUND**

### I.     The Underlying Litigation

*Hunter Biden v. Patrick Byrne*, No. 2:23-cv-9430 (C.D. Cal.) is a defamation action. "Mr. Biden initiated this matter against Defendant Patrick M. Byrne ("Byrne") alleging one cause of action for defamation stemming from Byrne's publication of statements he made that in 2021, Mr. Biden was soliciting an $80 million bribe from the Iranian government to enrich himself and his family … in exchange for the administration going easy on Iran in nuclear disarmament negotiations." Ex. A ("Touhy Request") at 1; s*ee* Compl. *Biden v. Byrne*, No. 2:23-cv-9430 (C.D. Cal.), ECF No. 1.

According to the complaint, Mr. Byrne made the allegedly defamatory statements in an interview published in a June 27, 2023 issue of *Capitol Times Magazine*. Compl. ¶¶ 18-21. In that interview, Mr. Byrne also allegedly made statements about his alleged involvement with law enforcement to obtain evidence of Mr. Biden's alleged solicitation of bribes. *See* Ex. B ("Subpoena") at 38. Mr. Byrne shared the allegedly defamatory statements in media

---

[1] If the Court regards any discovery from the FBI appropriate under these circumstances, the Court should, at most, order the FBI to provide the responses to interrogatories that undersigned counsel negotiated with the requester's counsel. *See* Exs. C ("Touhy Response"), D ("Interrogatories").

appearances in May 2023 and promoted the *Capitol Times Magazine* article in a media appearance in July 2023. Compl. ¶¶ 23-25.

## II. The Instant Subpoena

On January 7, 2025, Mr. Biden served the FBI with a Touhy request and subpoena requesting "the under oath oral testimony at a videotaped deposition of FBI Special Agent David Smith . . . and [for] the production of relevant documents from Special Agent David Smith." Touhy Request at 1. The subpoena identified January 30, 2025 as the date of the deposition, *see* Subpoena, while the Touhy Request sought the deposition prior to February 10, 2025. *See* Touhy Request at 2. The subpoena initially sought testimony on seven topics including "audio recordings Mr. Byrne claims to have played and/or turned over to SA Smith," "[t]he Defamatory statements and any factual basis supporting such Defamatory Statements, including SA Smith's knowledge of the same," "[a]ny meetings (in-person or otherwise) SA Smith has had with Mr. Bryne related to the Defamatory States and Mr. Biden," and "[d]ocuments, communications, and related information regarding SA Smith's purported authentication of the audio recordings and any other information provided to SA Smith by Mr. Bryne." *Id.* at 2-3.

Following an initial conversation between undersigned counsel and Mr. Biden's counsel, the latter sent DOJ a letter providing further details about the requested testimony, which now comprised twelve topics. Ex. E ("January 28 Letter"). In that letter, Mr. Biden's counsel wrote, "we are pursuing this discovery only because Byrne made various representations about Special Agent Smith" and "if we can have a conversation with you about Special Agent Smith's knowledge of these topics, it might change our need for or the timing of his deposition." *Id.* at 1, 3.

By letter dated February 14, 2025, DOJ denied Mr. Biden's request for various reasons, including because it was "burdensome, implicates classified and law enforcement sensitive

2

information, and seeks information that can be obtained from a more convenient, alternative source." Touhy Response at 4. The request for records and questioning on specific topics were also denied for being overbroad and noncompliant with the applicable Touhy regulations. *Id*. at 3, 5. Notwithstanding, and without waiver to its objections, DOJ offered to provide an accommodation by authorizing Special Agent Smith to answer no more than ten interrogatories with certain conditions. *Id*. at 5-6.

Following DOJ's Touhy response, Mr. Biden's counsel and DOJ engaged in multiple discussions on the nature and form of the interrogatories. On February 21, 2025, Mr. Biden's counsel transmitted the interrogatories, and DOJ and Special Agent Smith thereafter began preparing responses. Interrogatories. The interrogatories focused on the information that went to the crux of Mr. Biden's claim unlike the original request – specifically, whether Special Agent Smith communicated certain information to Mr. Byrne as Mr. Byrne claimed. *See id*.

On February 24, 2025, at the final pretrial hearing in *Biden v. Byrne*, not attended by DOJ, Mr. Biden's counsel informed the court that DOJ had denied their Touhy request and offered the interrogatories as an accommodation. Ex. F ("Pretrial Conference") at 10-11. When asked, Mr. Biden's counsel told the court that the DOJ's reasons for denying the Touhy request were "confidentiality, um, clearance issues, things of that nature within the United States government." *Id*. at 14. Mr. Biden's counsel failed to relate that the request was also denied because of noncompliance with the Touhy regulations and the availability of the information from another non-government sources that is more convenient, less burdensome, and less expensive. *Compare* Touhy Response *with* Pretrial Conference at 14. Mr. Biden's counsel also failed to inform the court of the numerous conversations he had with DOJ counsel to narrow the scope of the questions to information Mr. Biden contended he required for his claims. *See* Pretrial Conference at 14-25.

3

The parties and the Court proceeded to discuss recourse to obtain the desired information, and Mr. Biden's counsel indicated that there was legal precedent for enforcing the subpoena through a motion to compel. *Id*. at 14-18. Neither party informed the court that the subpoena sought a deposition outside the issuing court's jurisdiction and was, thus, unenforceable. *See id*. Accepting the parties' representations, the court directed Mr. Biden to file a motion to compel by March 3 and set a deadline for DOJ to respond by March 13. *Id*. at 14-25.

## **LEGAL STANDARD**

A subpoena served on a non-party government agency under Rule 45 "must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'" *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (quoting E*xxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)). The subpoena must also comply with the geographical limits of Rule 45(c) and if it does not, the court in the district in which compliance is required must quash the subpoena. Fed. R. Civ. P 45(d)(3)(A)(ii). Assuming compliance with geographical limitations of Rule 45(c), "the court must assess any objections to the subpoena under the standards supplied by Rule 45, which 'requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden.'" *Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 338 (D.D.C. 2021) (quoting *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018)); *accord Watts*, 482 F.3d at 508. The resisting party bears the burden of "show[ing] that the documents requested are either unduly burdensome or privileged." *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) (citing *Alexander v. FBI*, 192 F.R.D. 42, 46 (D.D.C. 2000)). However, "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in

evaluating the balance of competing needs." *Diamond Servs. Mgmt. Co.*, 339 F.R.D. at 339 (quoting *Watts*, 482 F.3d at 509). And a court's obligation to avoid imposing undue burden is "particularly acute" when a third-party subpoena is directed toward the United States. *In re Mot. to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs* ("*In re Veterans Affairs*"), 257 F.R.D. 12, 18 (D.D.C. 2009).

In addition, under Rule 26(c), the Court may issue a protective order to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also Watts*, 482 F.3d at 507 ("Rule 26 'vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.'" (quoting *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998))). This discretion includes orders forbidding the requested discovery altogether or "prescribing a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P 26(c)(1)(C).

## ARGUMENT

### I. Rule 45(d)(3)(A)(ii) Requires the Court to Quash the Subpoena

Because Special Agent Smith is located outside the geographical limits of Rule 45(c),[2] this Court must quash the subpoena for his deposition pursuant to Rule 45(d)(3)(a)(ii). *Jaynes v. Jaynes*, 496 F.2d 9, 10 (2d Cir. 1974); *see also Armenian Assembly of Am., Inc. v. Cafesjian*, 746 F. Supp. 2d 55, 61 (D.D.C. 2008) (holding that the 100 mile limit also applies to parties absent service within the geographical district). Mr. Biden's counsel request for a video deposition does not cure the jurisdictional defect. *In re Kirkland*, 75 F.4th 1030, 1042-47 (9th Cir. 2023).

---

[2] Special Agent Smith is located in Washington, D.C. and the court that issued the subpoena is in Los Angeles, California.

In *Kirkland*, the Ninth Circuit held that the bankruptcy court incorrectly concluded that remote testimony in a trial moved the place of compliance under Rule 45(c) "from the courthouse to wherever the witness is located, so long as that location is within 100 miles of the witness's home or place of business." *Id*. at 1042-43. The *Kirkland* court's holding was informed by Rule 32(a)(4), which provides that a witness is unavailable if "the witness is more than 100 miles from the place of hearing or trial or is outside the United States." Fed. R. Civ. P. 32(a)(4); *In re Kirkland*, 75 F.4th at 1044. If a subpoena's place of compliance "could change from the courthouse to the witness's location, there would be no reason to consider a long-distance witness unavailable." *Id.* at 1045 (internal quotation marks omitted). While the *Kirkland* court recognized that there was "intuitive appeal" to the bankruptcy court's conclusion, that conclusion was unfounded because "it would essentially render Rule 45(d)(c)(A)(ii) . . . a nullity as related to remote testimony." *Id*. And the bankruptcy court's conclusion was inconsistent with the plain text of the rule. *Id*. Although acknowledging that "technology and the COVID-19 pandemic have changed expectations about how legal proceedings can (and perhaps should) be conducted," the *Kirkland* court concluded "the rules defining the federal subpoena power have not materially changed. We are bound by the text of the rules." *Id*. at 1046 (citing *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)). Accordingly, the District Court for the Central District of California lacks jurisdiction to issue a subpoena to SA Smith or to compel his testimony.

**II.     The Subpoena Imposes an Undue Burden on the FBI**

The Court alternatively should quash the subpoena because it imposes an undue burden on the FBI pursuant to Rules 26 and 45. Rule 26(b) requires district courts to consider a number of factors potentially relevant to the question of undue burden, including (1) whether the discovery sought is "unreasonably cumulative or duplicative," (2) whether the discovery sought "can be

6

obtained from some other source that is more convenient, less burdensome, or less expensive," and (3) whether the discovery sought is "proportional to the needs of the case." Fed. R. Civ. P. 26(b). Each of those factors weighs in favor of quashing the subpoena.

Preliminarily, the Government has a "serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." *Watts*, 482 F.3d at 509 (quoting *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)). Special Agent Smith is a Supervisory Special Agent and subjecting him to a deposition would improperly "commandeer[]" government resources. *See BuzzFeed, Inc.*, 318 F. Supp. 3d at 359 (collecting cases where courts rejected requests for testimony of current government employees as unduly burdensome).

Those concerns are particularly heightened where, as here, subjecting a government employee to a deposition would compromise the FBI's law enforcement functions and burden the FBI as explained in the Declaration of Elizabeth Stan ("Stan Declaration").[3] It is widely recognized that law enforcement's interest in protecting its methods and techniques and protecting its personnel can justify the withholding of official information. *See, e.g.,* 5 U.S.C. § 552(b)(7) (exempting under FOIA disclosures that could "interfere with enforcement proceedings," "disclose the identity of a confidential source," disclose law enforcement techniques and procedures, or "could reasonably be expected to endanger the life or physical safety of any individual"); *In re Sealed Case*, 856 F.2d 268, 271-73 (D.C. Cir. 1988) (recognizing law enforcement privilege); *Kwan Fai Mak v. FBI*, 252 F.3d 1089, 1092 (9th Cir. 2001) (same). That

---

[3] The Stan Declaration will be filed *ex parte* and *in camera* for the reasons stated in the motion supporting that filing. Because of the mechanism for filing a miscellaneous motion in this District, the Stan Declaration and accompanying motion will be filed directly with the judge assigned to this matter.

principle is reflected in the DOJ's Touhy regulations which prohibit disclosure of information if it "would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26(b)(5). DOJ invoked that provision in its denial of Mr. Biden's Touhy request. Touhy Response at 4. Because enforcement of the subpoena would unduly burden the FBI, the Court should quash it alternatively on that basis.

### a. The Discovery Sought Has Been Obtained or Is Available from an Alternative Source.

Because Mr. Biden has obtained or could obtain the discovery sought elsewhere, the subpoena should be quashed. "Where potentially important legal rights are implicated by a subpoena and alternative sources are more convenient or less burdensome, those alternatives should be explored first." *Diamond Servs. Mgmt.* Co, 339 F.R.D. at 339. "Courts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an alternative and less burdensome method to the government." *Gomez v. City of Nashua*, 126 F.R.D. 432, 436 (D.N.H. 1989). In Mr. Biden's Touhy request, he identified two meetings allegedly attended by Mr. Byrne, John Moynihan, and Special Agent Smith about which he seeks the latter's testimony. Touhy Request at 1-5. Thus, Mr. Biden has already identified alternative sources of the information sought that are more convenient and less burdensome – Mr. Byrne and Mr. Moynihan. And both individuals have already been deposed. *See* Pretrial Conference at 4-15. Based on the interrogatories, Mr. Byrne was questioned on the exact topics Mr. Biden seeks to question Special Agent Smith. *See* Interrogatories. Presumably, John Moynihan was or could have been questioned on those topics. Thus, the burden on Special Agent Smith and the FBI vastly outweighs Mr. Biden's need for the testimony.

8

### b. The Subpoena Failed to Provide a Reasonable Time to Comply

The timetable for DOJ's compliance with the subpoena was unreasonable. *See* Fed. R. Civ. P. 45(d)(3)(A)(i). "[J]ust as negligence in the air does not exist neither does reasonableness: the analysis is necessarily case-specific and fact-intensive. What would be reasonable . . . may take on a very different cast where, as here . . . the schedules of the deponents and a number of lawyers would be unable to accommodate the belatedly filed notices." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 327 (N.D. Ill. 2005) (noting that "the plaintiffs were keenly aware of all of these facts and of the competing demands imposed by the other discovery disputes that had been percolating for some period"); *see also Minor Doe I Through Parent I Doe v. Sch. Bd. for Santa Rosa Cnty.*, 2009 WL 10674249, at *2 (N.D. Fla. Nov. 23, 2009) ("Although the rule does not specify what constitutes reasonable time to comply, common sense dictates that reasonableness is determined in relation to the extent of the materials requested and other underlying circumstances in the case."). "Certain factors may guide the district court's discretion" in examining any timeliness issue: "(1) the subpoena is 'overbroad on its face and exceeds the bounds of fair discovery'; (2) the subpoenaed witness is a nonparty acting in good faith; and (3) counsel for the witness was in contact with counsel for the party issuing the subpoena prior to filing its formal objection." *Yousuf v. Samantar*, 451 F.3d 248, 253 (D.C. Cir. 2006) (quoting *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y.1996)).

Here, DOJ meets all three factors. DOJ was given little time to review an overbroad subpoena request that, on its face, appeared to involve national security, malignant foreign government actors, law enforcement methods and techniques, and potentially the then, now

former, President of the United States.[4]  Furthermore, the subpoena was served in the midst of a change in Administration, which brought about changes in both FBI and DOJ leadership.  Due to the sensitive national security concerns of the request and the change in Administration, Mr. Biden's counsel did not provide sufficient time for DOJ to respond.

Despite the overbroad subpoena, undersigned counsel contacted Mr. Biden's counsel within days of assignment to his matter, January 27, 2025, to inform Mr. Biden's counsel that DOJ would not be able to respond by February 10, 2025 and requesting a more detailed outline of topics for the video deposition to facilitate DOJ's response.  *See* Ex. G ("Email Chain").  Mr. Biden's counsel did not object to the delay but did inform DOJ counsel that the final pretrial conference, set for February 24, 2025, and trial, set for March 4, 2025, provided likely deadlines.  *Id*.

Despite the compressed timeframe, overbroad subpoena, national security concerns, and change in Administration, DOJ sent its Touhy response on February 14, 2025 and thereafter tried to negotiate an accommodation of the request ahead of the March 4, 2025 trial date.  Touhy Response.  Mr. Biden's counsel unilaterally tabled the negotiations following the February 24, 2025 pretrial conference not attended by DOJ.  The subpoena under these circumstances failed to afford DOJ a reasonable time to comply and alternatively should be quashed on that basis.

### III.  In The Alternative, The Court Should Prescribe A Less Burdensome Method of Discovery

Although the subpoena should be quashed on any of foregoing independent and alternative grounds, if the Court determines otherwise, the FBI should be protected from the requested discovery.  The Court instead should issue a protective order requiring the FBI to respond to the

---

[4] The subpoena was not served until January 7, 2025, despite Mr. Byrne identifying Special Agent Smith as a witness with evidence relevant to the pending matter in his initial disclosure in early 2024, *see* January 28 Letter at 1, and again in responses to interrogatories in August 2024.  *See* Touhy Request at 19-30.

10

ten interrogatories previously offered by DOJ or a written deposition on only the ten interrogatories under Fed. R. Civ. P. 31. *See* Fed. R. Civ. P. 26(c)(1)(C) (court may issue protective order "prescribing a discovery method other than the one selected by the party seeking discovery.")

DOJ maintains that completing the ten interrogatories submitted by Mr. Biden is a less burdensome alternative means of discovery proportional to the needs of this case. Furthermore, it addresses the concerns identified in the Stan Declaration.

## CONCLUSION

This Court should quash the subpoena served on Special Agent Smith.

Dated: February 28, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

Jacqueline Coleman Snead
Assistant Branch Director

/s/ *Samuel Bean*
Samuel Bean (MD)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Phone: 202-455-9619
Email: Samuel.B.Bean2@usdoj.gov

12

Case 1:25-mc-00027-CRC   Document 1   Filed 03/03/25   Page 16 of 16